PAUL A. BONIN, Judge.
hln 1974, Melvin Masón was convicted of two counts of aggravated rape committed when he was under the age of 18 years old. He was sentenced to life imprisonment on each count, which life sentences were to run concurrently with each other.[1] Following the United States Supreme Court decision in Graham v. Florida, 560 U.S. -, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), Mr. Mason petitioned the district court to correct his unconstitutional life sentences by re-sentencing him to a term of twenty years on each count in accord with Louisiana Supreme Court precedent. See State v. Craig, 340 So.2d 191, 194 (La.1976) (remanded for re-sentencing for aggravated rape to the most serious penalty for the next lesser-included offense which is attempted aggravated rape and a sentence of twenty years at hard labor).
The district judge did not grant the relief Mr. Mason sought; the judge did amend the life sentences but only to make explicit that the sentences imposed by the court did not restrict parole eligibility. Mr. Mason filed a motion to reconsider the sentence as modified under La.C.Cr.P. art. 881.1 A(l), which the district court denied, and properly preserved the issue for appellate review under La.C.Cr.P. art. | ¡>881.2 A(l). He argued that the remedy selected by the district court was itself an illegal sentence — one not authorized by the Legislature — and again argued that the district court should re-sentence Mr. Mason to a definite term of twenty years at hard labor on each count, which was the legislatively provided maximum sentence for the next lesser-included offense of attempted aggravated rape.[2] The district court denied the motion to reconsider.
After the hearings in the district court and the lodging of the record in this court as well the submission of briefs by Mr. Mason and the district attorney, the Louisiana Supreme Court in State v. Shaffer, 11-1756 (La.11/23/11), 77 So.3d 939 (per curiam), directed how Louisiana courts *407 would comply with the Graham decision. We have had occasion already to follow Shaffer in our decision in State v. Richards, 2011-0349 (La.App. 4 Cir. 12/1/11), 78 So.3d 864. We thus directed the parties to the appeal to file supplemental briefs to address these recent developments.
While we apply the rationale of Shaffer and Richards, we note that it is not necessary to direct the Department of Corrections to calculate a date for Mr. Mason’s eligibility for parole consideration because he is eligible for parole consideration immediately. We thus amend the sentences imposed to sentences of natural life, and direct the Department of Corrections to revise Mr. Mason’s prison master according to the criteria in La. R.S. 15:574.4 A(2) to reflect an immediate eligibility date for consideration by the Board of Parole.
We explain our holding in greater detail in the following Parts.
-k[1]
The essential holding of Graham is that “[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.” 560 U.S. at -, 130 S.Ct. at 2034. “A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.” Id. (emphasis added). When the offense is committed before the offender’s 18th birthday, the offender must be given “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” 560 U.S. at -, 130 S.Ct. at 2057. He must be afforded the opportunity “to demonstrate that the bad acts he committed as a teenager are not representative of his true character.” 560 U.S. at -, 130 S.Ct. at 2033. He may well spend his imprisonment “attempting to atone for his crimes and learn from his mistakes.” Id.
And, importantly, a possibility of release dependent upon the remote possibility of executive clemency does not constitute such a “meaningful opportunity.” 560 U.S. at -, 130 S.Ct. at 2030; see also Solem, 463 U.S. at 303, 103 S.Ct. 3001 (“The possibility of executive clemency is nothing more than a hope for an ad hoc exercise of clemency.’ It is little different from the possibility of executive clemency that exists in every case ... ”)
By adopting a categorical rule, Graham “gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform.” 560 U.S. at -, 130 S.Ct. at 2032 (emphasis added). “The juvenile should not be deprived of the opportunity to achieve maturity of judgment and self-recognition of human worth and potential.” Id. “Life in prison without the possibility of parole gives no chance |4for fulfillment outside prison walls, no chance for reconciliation with society, no hope.” Id. (emphasis added).
The meaningful opportunity for parole consideration required by the Eighth Amendment does not foreclose the possibility that such an offender will spend his natural life “behind bars.” 560 U.S. at -, 130 S.Ct. at 2030. The Eighth Amendment, however, “does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.” Id. (emphasis added).
The Eighth Amendment does not permit a sentence that guarantees that a juvenile nonhomicide offender “will die in prison without any meaningful opportunity to obtain release.” 560 U.S. at -, 130 S.Ct. at 2033.
*408 II
Shaffer considered the claims of three prisoners who qualified for relief under Graham because all three had life sentences for commission of aggravated rape before the age of 18 years old.[3] State v. Shaffer, 11-1756, p. 1, 77 So.3d at 940, n. 2. In its per curiam decision, the Court ruled that Graham did not require it “to order the immediate release of relators from state supervision or to adopt a remedy that would guarantee immediate release by virtue of credit for time served.” State v. Shaffer, 11-1756, p. 3, 77 So.3d at 942.
The Court thus upheld the life sentences, but also held “that the Eighth Amendment precludes the state from interposing the Governor’s ad hoc exercise of executive clemency as a gateway” to parole eligibility or eligibility for parole consideration, or — as described by the court — “to accessing procedures the state |fihas established for ameliorating long terms of imprisonment as part of the rehabilitative process.” State v. Shaffer, 11-1756, p. 3, 77 So.3d at 942.
Then the Shaffer court ruled that “[t]he state thus may not enforce the commutation provisos in La. R.S. 15:574.4(A)(2) and 15:574.4(B) against relators and all other similarly situated persons.”[4] State v. Shaffer, 11-1756, pp. 3-4, 77 So.3d at 942 (emphasis added). Instead, the high court decided that for inmates serving life terms for nonhomicide offenses committed before their 18th birthday, they would be parole eligible and have eligibility for parole consideration “once they reach the age of 45 years and have served 20 years of their sentences in actual custody.” State v. Shaffer, 11-1756, p. 3, 77 So.3d at 942.[5]
The Court directed the Department of Corrections “to revise relators’ prison masters according to the criteria in La. R.S. 15:574.4(A)(2) to reflect an eligibility date for consideration by the Board of Parole.” State v. Shaffer, 2011-1756, p. 4, 77 So.3d at 943. The Court concluded that “[a]c-cess to the Board’s consideration will satisfy the mandate of Graham.” Id.
In our case with respect to Mr. Mason’s concurrent life sentences, he is under Shaffer now eligible for parole consideration.
_k.ni
Mr. Mason urges us to substitute for his life sentences the same sentence which *409 was imposed for aggravated rape in Craig, which was twenty years at hard labor. 340 So.2d at 194. Mr. Mason correctly argues that nowhere did the Shaffer court expressly overrule Craig. But it is clear to us that the Shaffer court considered and rejected the Craig remedy albeit without explanation. Shaffer, 11-1756, p. 2, 77 So.3d at 943, n. 3. And even though it is true that applying the Craig remedy to Mr. Mason’s life sentences would result in his immediate release from confinement on his concurrent sentences, a court of appeal is bound to follow the latest expression of law of the Supreme Court. See Pelican State Associates, Inc. v. Winder, 253 La. 697, 706, 219 So.2d 500, 503 (1969), and Oliver v. Magnolia Clinic, Inc., 11-2132, p. 3 (La.3/13/12), 85 So.3d 39, 44. See also Shaffer, 11-1756, p. 4, 77 So.3d at 943 (“We reiterate that this Court is not ordering relators released on parole.”). Thus, we conclude that we are foreclosed from applying the Craig remedy as a substitute for Mr. Mason’s life sentences.
IV
Because the Louisiana Supreme Court has ruled that the state may not enforce the commutation provisos[6] in La. R.S. 15:574.4 A(2) and 15:574.4 B against “all other similarly situated persons,” State v. Shaffer, 11-1756, pp. 3-4, 77 So.3d at 942, and because Mr. Mason is one such similarly situated person, we direct that the Department of Corrections revise Melvin Mason’s prison master to [7reflect his immediate eligibility for consideration of release on parole by the Board of Parole.
DECREE
We amend the concurrent life sentences imposed upon Melvin Mason to direct the Department of Corrections to revise Melvin Mason’s prison master to reflect his immediate eligibility for consideration of release on parole by the Board of Parole and, as amended, affirm the concurrent life sentences.
SENTENCE AMENDED AND AFFIRMED AS AMENDED.
LOMBARD, J., concurs with additional reasons.

. Mr. Mason’s plea was “guilty without capital punishment.” At the same time and apparently arising out of the same act, he was convicted of armed robbery and sentenced to imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for a term of ten years; the sentencing court ordered that the two concurrent life sentences be served consecutively to the armed robbery sentence. The 10-year armed robbery sentence was completed in 1983.

. Mr. Mason did not insist at SQntencing that the proposed twenty-year sentences necessarily be served concurrently.

. The sentence of only one of the three prisoners was imposed without benefit of parole, making him ineligible for parole.

. The Shaffer court did not explicitly find the two provisions unconstitutional as applied to relators or other similarly situated persons, such as Mr. Mason.

. The Court referred to its selection of the criteria for parole consideration as an "interim measure,” while awaiting recommendation of the Louisiana State Law Institute and legislative action. See State v. Shaffer, 11-1756, p. 4 n. 6, 77 So.3d at 943 n. 6. We have reviewed the Law Institute's report in response to 2011 Senate Concurrent Resolution No. 37 (dated December 22, 2011). The Legislature has closely regulated both "parole eligibility (which is determined by the sentence) and eligibility for parole consideration (which is dependent on meeting certain criteria and conditions specified by statute).” Bosworth v. Whitley, 627 So.2d 629, 631 (La.1994). "Parole eligibility” is determined by the sentence imposed. Id. A life sentence such as those imposed upon Mr. Mason had "no directive with regard to parole eligibility.” Id. at 634. Thus, under the statutory scheme, Mr. Mason’s life sentences themselves did not preclude "parole eligibility.” But because "eligibility for parole consideration” is distinguished from "parole eligibility,” Mr. Mason, having been sentenced to concurrent life sentences, was still not eligible for parole consideration. "No prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years.” La. R.S. 15:574.4 B;5 see also La. R.S. 15:572 A ("governor ... may commute sentences”).

. "No prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years.” La. R.S. 15:574.4 B;6 see also La. R.S. 15:572 A ("governor ... may commute sentences”), and Solem v. Helm, 463 U.S. 277, 301, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) ("Commutation ... is an ad hoc exercise of executive clemency. A Governor may commute a sentence at any time for any reason without reference to any standards.”)